IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Kelvin Demeatrius Brown, ) | |
| ) | Civil Action No. 8:04-22925-TLW-BHH |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Deputy Director Willie J. Bamberg, ) | |
| Chief Horace James, and Corporal ) | |
| Jermain Downing, in their individual ) | |
| and official capacities as OCRDC ) | |
| employees, ) | |
| ) | |
| Defendants. ) | |
| ) | |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff brought this action on November 16, 2004, seeking damages for alleged civil rights violations. Named as defendants were Willie Bamberg, Director of the Orangeburg Calhoun Regional Detention Center ("OCRDC"); Horace James, Chief of Security at OCRDC; and Jermaine Downing, a correctional officer at OCRDC. On April 13, 2005, the defendants filed a motion for summary judgment. By order filed September 21, 2005, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On October 12, 2005, the plaintiff filed his response to the motion.

**FACTS PRESENTED**

The plaintiff is currently an inmate at Allendale Correctional Institution in Fairfax, South Carolina. This lawsuit contains claims stemming from the plaintiff's time at the Orangeburg Calhoun Regional Detention Center, where the plaintiff was held as a pretrial detainee. The plaintiff alleges that on July 31, 2004, he was placed in administrative lockdown following an assault on one of his cell mates. He alleges that all of his personal belongings were taken and he was left with only the clothes he was wearing. He further alleges that he was "forced to sleep on the dirty concrete floor for a period of 14 days." The plaintiff contends that he was not involved in the assault against his cell mate and that he was never given the right "to plead [his] case." (comp. at 3). In his request for relief, the plaintiff asks for:

> A total sum of $300,000 all in actual damages for all pain and suffering. Lack of medical treatment for back pains due to sleeping on concrete. Not letting me plead my case. Belittling me by way of my character. And for all cruel and unusual punishment administered by OCRDC.

(comp. at 5).

Affidavits from the defendants indicate that the plaintiff was involved in an altercation with his two cell mates on July 31, 2004. Six officers, one of whom was defendant Downing, responded to the altercation. One of the plaintiff's cell mates, Darren Brown, was injured and was removed from the cell to obtain medical attention. The other two inmates, the plaintiff and Ronald Stevenson, were both cited for violation of Rule 4.4-3 (Assault and/or Attempted Assault) and Rule 4.4-4 (Fighting). Through her investigation, Officer Nakeya Hall determined that the plaintiff, along with his cell mate Stevenson, had violated the above cited prison rules. An incident report was prepared by Officer Hall.[1] The

---

[1] In her report, Officer Hall noted that neither the plaintiff nor his cell mate Stevenson would provide any information on the assault.

2

report was forwarded to Officer Hall's supervisor, Deborah McClary, who conducted a followup investigation and then forwarded the report to Chief of Security, Horace James. (McClary aff. ¶¶ 6 -8).

Chief James is the head of the Disciplinary Committee, which is responsible for conducting a fair and impartial hearing, attending to the due process rights of the inmate, making a finding based upon the evidence and testimony presented, and imposing disciplinary actions appropriate to the violation committed where a finding of "guilty" is made. Chief James, as part of the Disciplinary Committee, conducted a review in the plaintiff's matter on August 4, 2004. Based upon the evidence and testimony presented, there was a finding of guilt on the charges. A written copy of the findings of the Disciplinary Committee was provided to the plaintiff on August 4, 2004. The plaintiff was informed of his right to appeal the decision of the Committee, in writing within 10 days of the hearing, to the Director of the OCRDC, Willie Bamberg. No appeal of the findings of the committee was ever filed by the plaintiff (James aff. ¶¶ 7 -10, ex. B). The charge upon which the plaintiff was found guilty is a major infraction, one for which discipline by deprivation of an inmate's privileges, including disciplinary detention, is applicable (James aff. ¶12).

The plaintiff was placed in administrative segregation for fourteen days as a result of his violation of OCRDC rules (James aff. ¶ 13). Administrative segregation from the jail population can occur for many reasons, including protective custody, disciplinary action, observation of behavior, or serious risk of harm or hindrance to the order and operation of the facility (Bamberg aff. ¶ 3; James aff. ¶ 14). According to Director Bamberg and Chief James, the purpose of this policy is not to subject inmates to cruel and unusual punishment but in response to violations of policy concerning assaultive behavior for the protection and security of all inmates and employees in the facility (Bamberg aff. ¶ 4; James aff. 15). Chief James stated in his affidavit that the plaintiff was placed in administrative segregation "because he posed a serious threat to the orderly operation and security of the

facility evidenced by his violent propensities while being housed with other inmates." (James aff. ¶ 16).

As part of the segregation process, all property is taken away from that inmate with the exception of legal papers, the Bible, and personal hygiene items, along with fresh linens, towels and wash cloth. According to Director Bamberg and Chief James, all of the confiscated items are returned to the inmate upon completion of their time in segregation (Bamberg aff. ¶ 5; James aff. ¶ 19). Chief James testified in his affidavit that he oversaw the taking of only the property which he was authorized to take from the plaintiff. According to Chief James, "the mattress was withheld as a comfort item while on segregation in addition to lockdown status." Chief James and Director Bamberg testified that they never took any actions toward the plaintiff out of malice or with ill will (Bamberg aff. ¶ 8; James aff. ¶ 22). The plaintiff claims that he had to sleep on the "dirty concrete floor" while he was in administrative segregation (comp. at 3).

The plaintiff broadly alleges medical injury as a result of his fourteen days in segregation. In his complaint, he alleges that he suffered back pains as a result of sleeping on the concrete floor and that he received no medical treatment (comp. at 5). The medical record shows that the plaintiff was examined by medical staff on two occasions, once on August 27, 2004, and again on November 8, 2004, for complaints of headaches, back pain and dizziness.

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

5

The plaintiff contends that he was denied medical treatment "for back pains due to sleeping on concrete." Deliberate indifference by prison personnel to an inmate's serious illness or injury is actionable under 42 U.S.C. § 1983 as constituting cruel and unusual punishment contravening the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976).[2] The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Id.* at 102. This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Rogers v. Evans*, 792 F.2d 1052, 1058 (5th Cir. 1986). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999), *cert. denied*, *Grayson v. Royer*, 529 U.S. 1067 (2000).

The plaintiff here alleges that he suffered back pains as a result of sleeping on the floor and that he was denied medical treatment by the detention center employees. A claim of deliberate indifference to serious medical needs requires a greater showing than made here. There is no evidence in the record that the plaintiff had a "serious" injury or medical need. According to the medical records attached to the affidavit of Director James, the plaintiff was seen by medical staff on August 27, 2004, complaining of "a little bit of headaches and dizziness." The treating doctor noted that the plaintiff was "in absolutely no

---

[2] As discussed above, while pretrial detainees are afforded the protection of the Fourteenth Amendment rather than the Eighth Amendment, the deliberate indifference analysis is the same for both inmates and pretrial detainees. *See Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990).

6

distress" and later stated "for all intense [sic] and purposes these mild symptoms he has been having have completed abated and I do not think anything further is right now necessary." (Doc. 14-7).  Even if the plaintiff's mild complaints were to be considered a "serious medical need", the plaintiff quite simply has not shown that the defendants were indifferent to his medical needs.  As such, the plaintiff's claims are merely bald allegations which are insufficient to survive summary judgment.  *See White v. Boyle*, 538 F.2d 1077 (4th Cir. 1976)(conclusory allegations are insufficient to avoid summary judgment).

The plaintiff also alleges that he was subjected to cruel and unusual punishment during his time in segregation.  Specifically, he claims that the denial of a mattress violated his constitutional rights.  Confinement conditions of pretrial detainees are to be evaluated under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment. *Bell v. Wolfish,* 441 U.S. 520, 535 (1979); *Cooper v. Dyke,* 814 F.2d 941, 948 (4th Cir. 1987). Where a pretrial detainee complains of prison conditions, the proper inquiry is whether the conditions of his confinement amount to punishment before a proper adjudication of guilt. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992).  Not every hardship suffered during pretrial detention amounts to "punishment" in the constitutional sense. *Id.* (citing *Bell,* 441 U.S. at 53).  Absent a showing of expressed intent to punish on the part of the correctional officials, the determination of whether a particular action is punitive turns on whether it was rationally connected to legitimate non-punitive governmental objectives and whether it was excessive in relation to that purpose.  *Bell*, 441 U.S. at 537-40; *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988).

In his affidavit, Chief James asserts that the actions taken with regard to the plaintiff "were made with the purpose of preserving the overall safety and order of the [detention center]."  (James aff. ¶ 21).  The plaintiff has failed to produce evidence indicating that the conditions and restrictions of his administrative segregation were

7

imposed with the express intent to punish him or that they were not rationally connected to maintaining security at the facility and were excessive in relation to that purpose.

Further, the plaintiff has failed to show that he was deprived of a basic human need and deliberate indifference on the part of the prison officials. In a similar unreported case, *Meyer v. Miro*, No. C.A. 4:01-4260-25BH, 2003 WL 23198856 (D.S.C. 2004), the plaintiff inmate admitted to violating prison policy. However, he complained that the conditions of his segregation amounted to cruel and unusual punishment as he was stripped of his mattress and bedding material, and he was confined in only his underwear on multiple occasions consisting of five to 20 day periods for various infractions. The court noted that the plaintiff was not actually denied a mattress, outside recreation, and clothing, as possession of these items was dependent upon the inmate's compliance with policy and procedure. *Id.* at *1 n. 1. Further, the court noted that an inmate must show more than *de minimis pain* or injury. *Id.* at *8. Other than his unsubstantiated claims, there is no evidence that the plaintiff in the instant case suffered any serious injury during his time in segregation. While the plaintiff alleges his back aches went untreated, the plaintiff's medical records show that he was treated on August 27, 2004 for headaches and dizziness and again on November 8, 2004 for backaches, dizziness and frequent headaches, though the treating medical professional felt the symptoms had abated and there was nothing further to be done (Ex. A, 14-7). Based upon the foregoing, the plaintiff has failed to make a showing of anything more than a *de minimis* injury and is thus unable to support his claim.

The plaintiff also argues that the action taken against him was taken without due process of law. However, the record is clear that the plaintiff was placed in administrative segregation only after an investigation and a hearing during which he was adjudicated guilty of violating an OCRDC rule. The plaintiff has presented no evidence that the actions of the defendants did not advance a legitimate state interest or that they deprived him of his procedural due process rights.

The defendants have also raised the defense of qualified immunity. Qualified immunity protects government officials performing discretionary functions from suits for civil damages arising out of the exercise of their discretionary functions, provided that their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Slattery v. Rizzo*, 939 F.2d 213, 216 (4th Cir. 1991) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The plaintiff's rights must be established so clearly that a "reasonable official would understand that what he is doing violates that right." *Slattery*, 939 F.2d at 216 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Accordingly, ruling on a defense of qualified immunity requires "(1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the [official's] position would have known that doing what he did would violate that right." *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992).[3]

In determining whether the specific right allegedly violated was clearly established, tolerance is accorded in the qualified immunity defense to "'good faith' mistakes of judgment traceable to unsettled law, or faulty information, or contextual exigencies. . . [which] is deliberately designed to give protection to 'all but the plainly incompetent or those who knowingly violate the law.'" *Pritchett*, 973 F.2d at 313 (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an

---

[3] In order to shield officials from both the burdens of litigation as well as liability, establishment of qualified immunity is encouraged at the summary judgment stage. *Pritchett*, 973 F.2d at 313 (citing *Harlow,* 457 U.S. 800, 815-819). However, summary judgment remains appropriate "only if (1) there are no genuine issues of material fact, and (2) on the undisputed facts the defendant as movant is entitled to judgment as matter of law." *Pritchett*, 973 F.2d at 313 (citations omitted). Thus, it is appropriate to consider the third element of a qualified immunity defense (i.e., whether a reasonable officer would have known that his conduct violated a specific right) only if there are no genuine issues of fact with respect to the official's conduct under the circumstances. If issues of fact do exist, summary judgment is inappropriate, and the issue must be reserved for trial. *Pritchett*, 973 F.2d at 313 (citing *Mitchell*, 472 U.S. at 526).

9

actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne,* 526 U.S. 286, 290 (1999); *see also Suarez Corp. Indus. v. McGraw,* 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson,* 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there, "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott,* 156 F.3d 563, 567 (4th Cir. 1998); *see also Young v. City of Mount Rainier*, 238 F.3d 567, 577-78 (4th Cir. 2001) (where court concluded that the complaint did not allege a constitutional violation, there was no need to consider the question of qualified immunity).

In this case, as set forth above, the plaintiff has failed to demonstrate that the actions of the defendants violated any of his constitutional rights. Therefore, to the extent that the plaintiff is suing the defendants in their individual capacities, the defendants are entitled to qualified immunity on these claims.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this court recommends that the defendants' motion for summary judgment be granted.

IT IS SO RECOMMENDED.

s/ Bruce H. Hendricks
United States Magistrate Judge

January 30, 2006
Greenville, South Carolina